UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-304 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| JOSEPH GARTH, JR., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Joseph Garth, Jr.'s Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for Sentence Reduction (Doc. No. 42), which was supplemented two days later (Doc. No. 43). The government opposed the motion (Doc. No. 45), and Garth replied (Doc. No. 46). On May 1, 2023, this Court ordered Garth to provide updated information about the cardiology appointment scheduled to occur on or before April 30, 2023, which was referenced in the exhibits to his additional Motion. Garth provided a supplemental response (Doc. No. 50), which he supplemented again (Doc. No. 51). The government has not responded beyond its initial opposition. For the reasons that follow, Garth's Motion is DENIED.

I.  **Background**

    **A. Procedural History**

Garth pleaded guilty to a drug trafficking offense in the Northern District of West Virginia. (Judgment Entry, Doc. No. 1-3 at PageID 65-67.) He was sentenced to a 15-month term of incarceration and a three-year term of supervised release. (*Id.*) The term of supervised release included certain special conditions, notably that he would participate in the Offender Employment Program. (*Id.* at PageID 68.)

Garth's supervised release term began on April 11, 2022. (Doc. No. 5 at PageID 103.) In June 2022, supervision was transferred to the Northern District of Ohio. (Doc. No. 4.) On July 27, 2022, the Probation Department reported that Garth violated the term of supervised release relative to participation in the Offender Employment Program. (Doc. No. 5.)

When the assigned probation officer attempted to assist him or to obtain verification of his employment status, he stated he would rather return to the Bureau of Prisons ("BOP") than obtain employment. (Doc. No. 5 at PageID 103.) He was referred to Community Service through Northeast Ohio SPCA, but was asked to leave because he refused to work. (*Id*.) His supervising officer then had Garth sign an acknowledgment that his failure to comply with the Offender Employment Program would result in a request for a modification to the terms of his supervised release as a sanction. (*Id*.)

A few weeks later, Garth stated that he had full-time employment with the InterContinental Cleveland. (*Id*. at PageID 104.) This was not true. (*Id*.) A supplement violation report indicated that Garth falsely reported employment at the InterContinental Cleveland. (Doc. No. 10 at PageID 117.) When advised that he needed to verify this information with a paystub, he told the supervising officer that he would not provide a paystub or even collect his paycheck because "it would only be a $60.00 paycheck[,] and he did not need it." (*Id*.) The InterContinental Cleveland's Human Resources Department confirmed to the supervising officer that Garth had never been an employee of the hotel. (*Id*.)

On August 8, 2022, a violation hearing was held. As a result of the Court's findings, Garth was ordered to reside at a Residential Reentry Facility for a term of three (3) months. (Doc. No. 12.) On September 19, 2022, another violation report was submitted, indicating that Garth's numerous infractions at the Residential Reentry Center resulted in his unsuccessful

termination from their program.  (Doc. No. 17.)  On October 13, 2022, the Court held a supervised release violation hearing.  (Doc. No. 25.)  Garth admitted the violation.  (*Id.* at PageID 150.)  He was sentenced to a within-Guidelines range sentence of ten months, with three years of supervised release to follow.  (*Id.* at PageID 151.)

### B.  Garth's Medical Condition and Treatment

Garth did not raise his medical condition with this Court until he submitted the instant motion for relief.  Garth was diagnosed with Wolff-Parkinson-White ("WPW") syndrome approximately seven to eight years before this term of incarceration.  (Doc. No. 42 at PageID 255; Doc. No. 42-1 at PageID 263.)  Garth's physician referred him for an ablation to treat this heart condition at some unspecified point.  (Doc. No. 42 at PageID 255; Doc. No. 42-1 at PageID 263.)  Garth did not follow up on this surgery referral.  (Doc. No. 42 at PageID 255; Doc. No. 42-1 at PageID 263.)

Based on the medical records Garth attached to his filings, a summary of Garth's pertinent contacts with BOP staff is as follows:

Garth arrived at FCI McKean on December 1, 2022.[1]  On December 8, 2022, Garth sought health services.  His chief complaint was a pinching arm pain that comes on about twice per week for five minutes at a time.  (Doc. No. 42-1 at PageID 293.)  Garth reported that he had not been taking his medications as prescribed.  (*Id.*)  He also reported his WPW diagnosis and that "he was supposed to have a procedure a few years ago but did not follow through with this." (*Id.*)  Labs and an EKG were ordered.  (*Id.* at PageID 295.)

---

[1] An Administrate Note reflects that Garth was part of "new bus intake" on December 1, 2022. (Doc. No. 42-1 at PageID 299.)

On January 11, 2023, an EKG was performed.  (*Id.* at PageID 286.)  On January 17, 2023, a follow-up evaluation was held, and a cardiology consultation was requested.  (*Id.* at PageID 283-84.)  On January 22, 2023, a triage note was entered.  Garth was complaining of increased chest pain.  (*Id.* at PageID 279.)  An EKG was performed.  (*Id.* at PageID 280.)  The results suggested no change from the prior EKG, but "interpretation on machine differs."  (*Id.*)  Ongoing scheduling for a cardiology consultation was noted.  (*Id.*)

On February 19, 2023, Garth was seen again for complaints of chest pain.  His EKG was abnormal, and he was transported to the emergency room.  (*Id.* at PageID 272.)  In a February 22, 2023, Administrative Note, the provider stated, "[t]he cardiologist has recommended referral to electrophysiologist for consideration of ablation.  Adding consult."  (*Id.* at PageID 261.)  The Note also indicated that "[h]e was recently evaluated by a local cardiology provider who recommended evaluation by electrophysiology" for the same reason.  (*Id.*)  The target date was noted as April 30, 2023.  (*Id.*)

In response to the Court's order for supplemental information relative to the cardiology consultation scheduled to occur before April 30, 2023, defense counsel stated as follows:

> Counsel received the attached records on May 2, 2023.  (Exh. A).  There is no reference to the April 30th cardiology appointment.  However, the records note that Mr. Garth was scheduled for a cardiac ablation on May 15, 2023. (Exh. A: Medical Records, p. 1).  Confusingly, the records also show a scheduled cardiology appointment for a radiofrequency ablation for October 31, 2023. (Exh. A: Medical Records, p. 2).  Counsel has been trying for the past couple of weeks to have a legal call with Mr. Garth for clarification of these records.  The Bureau of Prisons has been nonresponsive.

(Doc. No. 50 at PageID 454.)

On June 8, 2023, defense counsel spoke with Garth.  Counsel supplemented the prior filings with the following information provided by Garth:

> On May 14, 2023, Mr. Garth was placed into the Special Housing Unit ("SHU") and told he was being transported to Buffalo, New York the following morning to have heart surgery. Mr. Garth had never met the doctor who was to be performing the surgery and had not had any pre-testing [] done by a cardiologist. Because Mr. Garth was in the process of having this surgery done by his doctor at the Cleveland Clinic just before his arrest, he is aware that certain cardiac testing should be done prior to the surgery. Mr. Garth was never given a stress test or any cardiac testing. This made Mr. Garth very uncomfortable.

(Doc. 51 at PageID 620.)

Garth informed his counsel that he was not permitted to call his family. (*Id.*) He also reported that he was told to sign a medical waiver. (*Id.*) Ultimately, he "refused transport on May 15, 2023[,] to have surgery in Buffalo by some unknown doctor . . . and the BOP is not providing any medical care . . . ." (*Id.* at PageID 620-21.)

II.     **Law and Analysis**

Once sentence is pronounced, a district court may not modify the sentence except in limited circumstances. 18 U.S.C. § 3582(c). The exception on which Garth relies here is that of "compassionate release." 18 U.S.C. § 3582(c)(1)(A)(i).

"The compassionate-release statute authorizes the district court to reduce a defendant's sentence if it finds that (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the sentencing factors under 18 U.S.C. 3553(a), to the extent that they apply, support the reduction." *United States v. Cornell*, No. 21-3262, 2021 WL 4173446, at *2 (6th Cir. July 7, 2021) (quoting 18 USC § 3582(c)(1)(A)) (affirming the court's conclusion that the Section 3553(a) do not support granting compassionate release even where defendant had a serious heart condition); *see also United States v. Allen*, 819 F. App'x 418, 419 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Garth bears the burden of proving entitlement to this relief. *United States v. Trompeter*, 510 F. Supp. 3d 526, 529 (N.D. Ohio 2020). "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020)). "[N]o policy statement applies to defendant-filed motions for compassionate release" versus those motions filed by the Director of the BOP. *United States v. Gills*, No. 22-1065, 2022 WL 18542500, at *2 (6th Cir. Oct. 13, 2022) (citing *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), which held that, under the First Step Act of 2018, the relevant policy statement, USSG § 1B1.13, applies only to motions filed by the Bureau of Prisons).[2]

As to the first consideration, the words "extraordinary and compelling" are given their ordinary meaning because they are not defined in the statute." *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021). "[W]hen Congress enacted the statute in 1984, "extraordinary" was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id*. at 562 (citation omitted). Whereas "compelling meant 'forcing, impelling, driving.'" *Id*. (citation omitted.) Facts that existed at the time of sentencing cannot support a finding of extraordinary and compelling reasons for compassionate release. *Hunter*, 12 F.4th at 569. To make this showing, Garth must demonstrate that his "personal circumstances changed after sentencing in a way that is 'extraordinary and compelling,' before the court is permitted to weigh (or revisit) the § 3553(a) factors." *Id*. at 569-70.

---

[2] There is no dispute between the parties regarding the exhaustion of remedies or that this is a defendant-submitted request for compassionate release. (Doc. No. 42 at PageID 253; Doc. No. 45 at PageID 436 n. 1)

Garth learned he had this heart condition seven to eight years ago. (Doc. No. 42 at PageID 255; Doc. No. 42-1 at PageID 263.) Knowing of this condition – and knowing of it for so long – before his sentencing in this case undercuts Garth's argument that this very condition now presents an extraordinary and compelling reason to reduce his sentence.

The Court recognizes that this finding does not address the entirety of Garth's argument, however, because he claims that BOP is not providing adequate care. As summarized in the pertinent part above, the medical records Garth submitted do not support such a finding. He had several encounters with medical staff who noted orders for labs, EKG testing, and referrals to an electrophysiologist and cardiologist. Notably, Garth acknowledges that the BOP was prepared to transport him to Buffalo for the ablation. He alleges that necessary pre-operative procedures were not to be performed. But this is only his belief based on information he claims the medical staff provided to him. There is no independent record to support Garth on this point. But even if there was, the fact that medical professionals could differ is not so uncommon as to create an extraordinary or compelling circumstance.

While the Court sympathizes with the uncertainty and fear caused by such a medical procedure, the fact remains that the procedure was scheduled. And Garth refused. Refusing the same treatment that he argues necessitates his release precludes a finding that his present circumstances amount to an extraordinary and compelling reason for release. *See United States v. Yarbrough*, Case No. 21-5692, 2022 U.S. App. LEXIS 825 (6th Cir. January 11, 2022) (holding that the district court did not abuse its discretion in finding that refusal to get vaccinated

precluded prisoner from relying on pandemic as an extraordinary and compelling reason for relief).[3]

Even if Garth's medical condition was new information that presented an "extraordinary and compelling" circumstance, an evaluation of the applicable Section 3553(a) factors and a thorough review of the merits does not support a sentence reduction. *See Jones*, 980 F.3d at 1114-15 (noting that district courts must consider all relevant Section 3553(a) factors to determine whether those factors would support a modified or reduced sentence); *see also United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020).

Garth is a young man. (Doc. No. 32 at PageID 175.) The underlying drug offense was his first federal conviction. He served 15 months and began his term of supervision on April 11, 2022. (*Id*. at PageID 176.) During his brief term of supervision, he appeared to comply with all conditions of supervision, save one. (*Id*. at PageID 176.)

---

[3] The Court also notes that Garth is not entitled to relief under the compassionate relief statute merely because he has a medical condition. A court in this district collected cases and found that

> [c]ourts have denied compassionate release to defendants with [] difficult medical conditions. *United States v. Rivernider*, No. 3:10-cr-222, 2019 WL 3816671, at *3, 2019 U.S. Dist. LEXIS 137134, at *3 (D. Conn. Aug. 14, 2019) (denying compassionate relief where the defendant required bypass surgery and follow-up care after a heart attack); *White v. United States*, 378 F. Supp. 3d 784, 786-87 (W.D. Miss. 2019) (denying compassionate relief where the defendant was legally blind and had osteoarthritis in both knees)[.] Where courts have granted compassionate release due to medical conditions, the medical conditions are exceptionally severe. *See e.g. United States v. York*, Nos. 3:11-CR-76; 3:12-CR-145, 2019 U.S. Dist. LEXIS 119768, 2019 WL 3241166, *17 (E.D. Ten. July 18, 2019) (granting compassionate relief primarily due to defendant's congestive heart failure); *United States v. Beck*, No 1:13-CR-186-6, 2019 U.S. Dist. LEXIS 108542, 2019 WL 2716505, *2 (M.D. N.C. June 28, 2019) (granting compassionate relief where defendant had invasive cancer and BOP had shown indifference to defendant's treatment).

*United States v. Dusenbery*, No. 5:91-CR-291, 2019 WL 6111418, at *3 (N.D. Ohio Nov. 18, 2019), *aff'd,* No. 19-4207, 2020 WL 7315919 (6th Cir. July 24, 2020).

Not more than three months into this term of supervision, Garth violated the special condition imposed to promote rehabilitation through employment. (*Id*.) The supervising officer documented her efforts to compel compliance and assist with employment options, including Community Service with Northeast Ohio SPCA. He refused. He was warned he would be sanctioned for non-compliance. He did not comply.

Recognizing that revocation is not typically the most effective method of promoting rehabilitation, the Court modified his supervision to include a three-month term in a residential setting. (*Id*. at PageID 176-77.) This term was three months less than the six-month term recommended by the Probation Department. (*Id*. at PageID 176.) But Garth still could not comply. Very shortly after arriving at the residential facility, he began violating the terms of the program. As noted by the government, he amassed ten violations in only 24 days, and some of those were "whereabouts unknown" violations. (*Id*. at PageID 174.) The Advisory Guidelines range was six to twelve months. (*Id*. at PageID 165.) The government sought revocation for a term of 12 months. (*Id*.) After considering all of the Section 3553(a) factors, the Court imposed a term of ten months, noting specifically that Garth's lack of respect for Court orders and inability to be deterred from repeated violations of Court orders – even after the Court showed him leniency – was a significant reason for the term imposed. (*Id*. at PageID 178-79.)

The Court therefore finds that Garth's present circumstances and ongoing medical condition, when weighed along with the other applicable sentencing factors in this case, do not support a finding that Garth's term of incarceration should be reduced or modified.

### III.     Conclusion

For the foregoing reasons, Defendant Joseph Garth, Jr.'s Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for Sentence Reduction is DENIED.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: June 28, 2023